# IN THE COURT OF APPEALS OF IOWA

No. 13-0462
Filed April 30, 2014

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**ROBERT LEE GOMEZ,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Karen R. Salic, District Associate Judge.

A defendant appeals his convictions for assault resulting in bodily injury and harassment in the second degree. **REVERSED AND REMANDED.**

Mark C. Smith, State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Katie Fiala, Assistant Attorney General, Carlyle D. Dalen, County Attorney for appellee.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**TABOR, J.**

Robert Gomez appeals his convictions for assault resulting in bodily injury and harassment in the second degree. He argues his trial counsel was ineffective for not objecting to several problems with the jury instructions. Because we agree counsel breached a material duty by not challenging the instructions for assault, justification, and harassment, and Gomez was prejudiced by the faulty instructions, we reverse both convictions and remand for a new trial.

## I. Background Facts and Proceedings

A reasonable jury could have found the following facts. On May 26, 2012, Robert Gomez and his son, Bobby, attended the band festival parade in Mason City. While there, they encountered Avak Haroutunian and Mike Jones.[1] Haroutunian was holding his nine-year-old daughter's hand. When Haroutunian rebuffed Gomez's offer to shake hands, Gomez said: "[T]hat's how it's going to be, huh?" Gomez then punched Haroutunian in the mouth. Jones described it as a "straight sucker punch." Haroutunian lunged over to protect his daughter. A small scuffle ensued, during which Jones punched Gomez.

Gomez denies punching Haroutunian. He claims it was Haroutunian who threw the first punch and ventured that Haroutunian's injuries might have occurred when Gomez "slammed him down" during the scuffle. When the dust settled, Haroutunian's lip was swollen, split, and slightly bleeding.

The next day Gomez and Haroutunian had another run in. This time, Gomez accosted Haroutunian when he was picking up his thirteen-year-old son

---

[1] Jones and Haroutunian are second cousins. Gomez is a first cousin to Haroutunian's mother and an uncle to Jones.

from his ex-wife's house. Gomez yelled from across the street: "[T]his isn't over yet . . . this isn't over, get out of the car, I'm going to kick your ass." The shouting scared Haroutunian's daughter who was with him in the car. Haroutunian called the police. Gomez denied this incident took place.

On June 29, 2012, the Cerro Gordo County Attorney charged Gomez with one count of assault resulting in bodily injury, in violation of Iowa Code sections 708.1(1) and 708.2(2) (2011), and one count of harassment in the second degree, in violation of Iowa Code sections 708.7(1) and 708.7(3). Both charges are serious misdemeanors.

Gomez stood trial on February 19, 2013. A total of eight witnesses testified. The State called Haroutunian, his ex-wife, Stephanie, Jones, and Mason City Police Officer Jacob Hubert. The defense called Gomez, his son, Bobby, Jason King, and Candy Kiss, who was working at the Tobacco Outlet and saw Gomez on the day of the harassment incident. On February 20, 2013, the jury returned a verdict of guilty on both counts. The district court sentenced Gomez to ninety days in jail, $630 in fines plus surcharges, and court costs. Gomez now appeals.

## II.    Error Preservation and Standard of Review

The failure to timely object to jury instructions waives error on direct appeal. *State v. Taggart*, 430 N.W.2d 423, 425 (Iowa 1988). But we recognize claims of ineffective assistance of counsel as an exception to the error-preservation rule. *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). We review Gomez's claims of ineffective assistance de novo. *See id.* at 783.

## III. Analysis

Gomez contends his trial counsel did not raise necessary objections to the jury instructions. To establish his claims of ineffective assistance of counsel, Gomez must prove by a preponderance of the evidence: (1) trial counsel failed to perform an essential duty and (2) prejudice resulted from his failure. *State v. Clay*, 824 N.W.2d 488, 495 (Iowa 2012) (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984)).

We normally preserve ineffective assistance claims for postconviction relief proceedings to allow for a full development of the facts surrounding the attorney's conduct. *State v. Atley*, 564 N.W.2d 817, 833 (Iowa 1997). But we will resolve the claims on direct appeal when the record allows us to do so. *State v. Arne*, 579 N.W.2d 326, 329 (Iowa 1998). We find the record adequate to address Gomez's claims.

### A. Assault and Justification Instructions

Gomez alleges his counsel was ineffective for failing to object to two omissions in the instructions which affected the jury's understanding of the assault charge. First, the court did not instruct the jury that assault required proof of specific intent. Second, the court did not instruct the jurors how to proceed if they accepted his justification defense. Because we find counsel's performance was deficient in regard to the justification instructions and Gomez was prejudiced by the error, we reverse his assault conviction on that basis.[2]

---

[2] For purposes of a potential retrial, we note pursuant to *State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010), the district court should inform the jurors the specific intent instruction applies to the intent necessary to commit assault.

The district court provided the jury with the following marshalling instruction for assault resulting in bodily injury:

1.      On or about the 26th day of May, 2012, [Gomez] did an act which was intended to cause pain or injury or result in physical contact which was insulting or offensive to Avak Barkev Haroutunian.
2.      [Gomez] had the apparent ability to do the act.
3.      [Gomez's] act caused a bodily injury to Avak Barkev Haroutunian as defined in Instruction No. 7.
        If the State has proved all of the elements, [Gomez] is guilty of Assault Resulting in Bodily Injury.  If the State has failed to prove element 3, [Gomez] is guilty of Assault.  If the State has failed to prove either element 1 or element 2, [Gomez] is not guilty.

As defense counsel pointed out at trial, the marshalling instruction did not limit the assaultive "act" to the punch alleged by the State's witnesses.  Counsel asked for justification instructions based on his client's testimony.  In his testimony, Gomez denied punching Haroutunian.  But he did acknowledge physical contact between them.  Gomez admitted grabbing Haroutunian and ducking under his swing.  Gomez speculated Haroutunian may have cut his lip on the ground when Gomez "slammed him down" as Gomez was trying to get a hold of him.  Given this testimony, the jury could have determined the act of slamming Haroutunian to the ground was the assault.  Over the State's objection, the court granted the defendant's request for instructions on the defense of justification, reasoning it would be helpful to the jury to "have an actual structure of the law to analyze the Defendant's claims."

On appeal, Gomez claims his attorney had a duty to ask the court to relate the justification instructions to the assault charge.  He acknowledges the

justification instructions given[3] correctly reflected the law, but complains: "The record is devoid of any information from which the jury might determine what to do about justification." He asserts "the court's instructions were prejudicial, not because they mislead the jury, but because they did not lead the jury at all."

We agree with Gomez's argument. The marshalling instruction for assault did not include as an element that Gomez acted "without justification." That omission would not be a problem if the record lacked sufficient evidence to generate a jury question on justification; our supreme court has held that justification is an affirmative defense to assault, as defined in section 708.1, rather than an element of that crime. *See State v. Delay*, 320 N.W.2d 831, 834 (Iowa 1982). But in this case the district court properly found sufficient evidence to generate a jury question on justification. Therefore, the district court would have assisted the jurors by informing them—in the assault marshalling instruction—that they could not convict unless the State proved Gomez acted without justification. *See* Iowa State Bar Ass'n, Iowa Criminal Jury Instruction 800.1 (Assault–Elements) (commenting that pursuant to *Delay* lack of justification is not an element "unless the defendant has produced sufficient evidence to raise the defense. In that event the State must prove lack of justification."). If a lack-of-justification element is not included in the assault marshalling instruction, then the justification instructions must inform the jurors how to proceed if they find the State did not prove defendant was acting without justification. Counsel performed below the expected standard by not objecting to the incomplete instructions.

---

[3] Iowa State Bar Ass'n, Iowa Criminal Jury Instructions 400.1, 400.2, 400.7, and 400.8.

In the absence of an element requiring the State to prove the lack of justification, the jury could have mistakenly believed it could convict Gomez of assault if the State satisfied the three elements listed in the marshalling instruction. The jury had no guidance on how to apply the free-floating instructions on justification. Accordingly, Gomez was prejudiced by his attorney's failure to object to the lack of connection between the assault and justification instructions.

### B. Harassment Instruction

The jury received the following harassment instruction:

> The State must prove all of the following elements of Count II-Harassment in second degree:
> 1. On or about the 27[th] day of May, 2012, [Gomez]:
> a. Purposely communicated with Avak Barkev Haroutunian by personal contact, without a legitimate purpose, in a manner likely to cause him annoyance or harm.
> 2. [Gomez] communicated a threat to commit bodily injury,
> 3. [Gomez] did so with the specific intent to intimidate or alarm Avak Barkev Haroutunian.
> If the State has proved all of the elements, [Gomez] is guilty of Harassment in the Second Degree. If the State has failed to prove element 2, [Gomez] is guilty of Harassment in the Third Degree. If the State has failed to prove either element 1 or element 2, the Defendant is not guilty.

Gomez describes this marshalling instruction as "cobble[d] together" to reflect the facts of the case, but claims it was legally deficient in several ways.

First, Gomez argues his counsel should have objected to the "purposely communicated" reference because the statute does not require communication. Section 708.7(1)(b) requires only "personal contact" with the victim. The subsection further explains "personal contact" may be accomplished without oral communications, "although it may include these types of contacts." Because the

State accused Gomez of engaging in personal contact with Haroutunian by yelling at him, we do not find inclusion of the phrase "purposely communicated" required an objection or resulted in prejudice to Gomez.

Second, Gomez argues the instruction failed to require the jury to find his contact with Haroutunian was "purposeful" as that term is used in section 708.7. The district court is not required to word the instructions in any particular way so long as they accurately convey the applicable law. *State v. Morrison*, 368 N.W.2d 173, 175 (Iowa 1985). Here, the court informed the jury the State was required to prove Gomez "purposely communicated" with Haroutunian. We see no basis for his trial attorney to object to that wording.

Third, Gomez correctly points out the instruction required proof his contact caused Haroutunian "annoyance" and "harm" when those terms do not appear in section 708.7(1)(b). The inclusion of those words increased, rather than diminished the State's burden. The second and third elements appropriately required proof Gomez communicated a threat to commit bodily harm and did so with the specific intent to intimidate or alarm Haroutunian. Trial counsel did not breach a material duty in not objecting to the inclusion of those terms and they did not prejudice Gomez.

Finally, Gomez argues the last paragraph of the harassment instruction needed clarification. That paragraph started off by telling the jury: "If the State has proved all the elements, the Defendant is guilty of Harassment in the Second Degree." The next sentence advised: "If the State has failed to prove element 2, the Defendant is guilty of Harassment in the Third Degree." The next sentence

instructed the jury to acquit if "the State failed to prove either element 1 or element 2." The paragraph did not tell the jury what to do if it found the State failed to prove the third element—that he acted with the specific intent to intimidate or alarm.

The State argues the only way for the jury to have convicted Gomez was for it to find the State proved all three elements of harassment. But that argument begs the question.[4] We do not know if the jurors found proof of all three elements or if they found proof of the first two elements but concluded based on the last sentence of the instruction (directing an acquittal only when either element one or two was not proven) that they could still find him guilty. The instruction did not tell the jury what verdict to reach if it found Gomez had personal contact with Haroutunian and communicated a threat to commit bodily injury, but did not believe he did so with the specific intent to intimidate or alarm Haroutunian.

Jury instructions must be written to give the jurors "a clear understanding of what they need to decide." *Lovick v. Wil-Rich*, 588 N.W.2d 688, 695 (Iowa 1999). When an instruction is "conflicting and confusing, error is presumed prejudicial and reversal is required." *Burkhalter v. Burkhalter*, 841 N.W.2d 93, 97 (Iowa 2013) (internal quotation marks omitted).

In failing to take the proper steps to ensure the marshalling instruction for harassment provided the jury clear guidance, counsel's performance did not satisfy the constitutional requirement for effective assistance. *See State v. Goff*,

---

[4] In other words, the argument bases its conclusion on an assumption as much in need of proof as the conclusion itself. *See* Bryan A. Garner, *Modern American Usage*, at 93 (3d ed. 2009).

342 N.W.2d 830, 837-38 (Iowa 1983). We also conclude the deficient performance created a reasonable probability the jury convicted without finding proof of all the elements. An instruction which misleads or misdirects the jury in a significant way requires reversal. *See generally State v. Boner*, 186 N.W.2d 161, 166–67 (Iowa 1971) (reversing where improper inclusion of the word "negligent" may have led the jury to return a manslaughter conviction based on a lack of due care unaccompanied by the necessary wanton and reckless disregard or indifference to the safety of others). Accordingly, we reverse Gomez's conviction of harassment in the second degree and remand the case for retrial.

### C. Pro Se Claims

In his pro se brief, Gomez sets out three paragraphs of information he deems "valuable" to his case. He discusses the photographs of Haroutunian's mouth injury. He discusses his own ailments. And he discusses a conversation he allegedly had with a "key witness," whom he does not name but is apparently referring to Candy Kiss. He does not link the information to any legal argument. Random mention of an issue, without elaboration or supporting authority, is not sufficient to raise an issue for review. *Schreiber v. State*, 666 N.W.2d 127, 128 (Iowa 2003). We cannot consider Gomez's brief because his statements are not supported by legal argument. *See Baker v. City of Iowa City*, 750 N.W.2d 93, 103 (Iowa 2008). The pro se nature of his supplemental brief does not change our conclusion. *In re Estate of DeTar*, 572 N.W.2d 178, 180 (Iowa Ct. App.

1997) ("Substantial departures from appellate procedures cannot be permitted on the basis that a non-lawyer is handling [his of] her own appeal.").

**REVERSED AND REMANDED**.