# IN THE COURT OF APPEALS OF IOWA

No. 18-2239
Filed July 22, 2020

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOHN CHARLES DONAHUE,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Audubon County, Jeffrey L. Larson, Judge.

A defendant appeals his conviction for sexual abuse in the third degree.

**AFFIRMED.**

Christine E. Branstad and Nathan A. Olson of Branstad & Olson Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Richard Bennett, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Schumacher, JJ.

**SCHUMACHER, Judge.**

Defendant John Donahue appeals his conviction for sexual abuse in the third degree. He assigns error to the trial court's ruling prohibiting cross-examination of the victim on a separate allegation of sexual abuse by the defendant and the submission of an allegedly flawed instruction to the jury. He further asserts the evidence was insufficient to support his conviction. We affirm the court's ruling that the rape shield law prohibited the expanded cross-examination and we reject the defendant's jury-instruction argument as unpreserved. We also disagree that the evidence was insufficient and therefore affirm the conviction.

**Factual Background**

Following verbal and physical abuse by her mother, minor child T.G. moved in with her father and his future wife Kimberly in Audubon, Iowa, on July 31, 2014.[1] Kimberly's grandfather John Donahue owned the home and lived approximately two blocks away. T.G. would on occasion walk from her home to Donahue's home to bake with Donahue's wife or receive homework help.

On one such occasion between July 31, 2014, and August 26, 2016, T.G. was at the Donahues' house with one of her younger stepsiblings. T.G. was sitting on the couch watching TV and taking turns playing on a tablet computer with her stepsibling, who was seated on the floor nearby. While the defendant was initially seated in a chair, he moved to the couch, sat next to T.G., and put his hand into her underwear, digitally penetrating her vagina.

---

[1] T.G.'s father and Kimberly married in late summer 2018, shortly before the October 2018 trial.

T.G. did not report the offense until she participated in a forensic interview conducted because of an unrelated incident involving another sibling. During the interview, T.G. described more than one instance of sexual abuse by the defendant, including an incident that occurred in Carroll, Iowa.

A criminal complaint was filed on April 26, 2017, charging Donahue with sexual abuse in the third degree for the incident that occurred at his home in Audubon. The trial began on June 26, 2018. Relevant to this appeal, both parties filed a motion in limine prior to the trial. The defendant's motion included the request "[t]hat the jury not be told at any time by the State or the State's witnesses about any alleged prior bad acts by the Defendant." Additionally, defense counsel indicated at the June trial that it did not intend to explore T.G.'s Carroll allegation. The June trial resulted in a deadlocked jury. A second trial was scheduled for October 2018. At the second trial, the court granted the parties' motions in limine from the first trial in full. The defendant was convicted of one count of sexual abuse in the third degree, pursuant to Iowa Code section 709.4(1)(a) (2017). The defendant now appeals.

**Standard of Review**

We review trial court rulings on admissibility of evidence under Iowa Rule of Evidence 5.412 for abuse of discretion. *State v. Alberts*, 722 N.W.2d 402, 407 (Iowa 2006). We review challenges to jury instructions and claims of insufficient evidence for correction of errors at law. *State v. Benson*, 919 N.W.2d 237, 241–42 (Iowa 2018) (insufficient evidence); *State v. Hanes*, 790 N.W.2d 545, 548 (Iowa 2010) (jury instructions).

**Discussion**

On appeal, the defendant argues the district court abused its discretion by precluding trial counsel from cross-examining T.G. on an alleged sexual act occurring in Carroll and erred by allowing a jury instruction, which may have implied that multiple sexual acts occurred. He also argues the evidence was insufficient to support the verdict.

### I. Prohibited cross examination on the Carroll incident

Defense counsel was prohibited from cross-examining T.G. related to her allegation that defendant abused her in Carroll. The State declined to charge Donahue in relation to the Carroll allegation. The trial court ruled the topic was barred by both Iowa's rape shield law and the motion in limine, which prevented inquiry into Donahue's prior bad acts. We conclude the trial court properly applied the rape shield law and find no abuse of discretion.

At the first trial, the parties agreed not to inquire into T.G.'s allegation of abuse arising from an incident in Carroll. Furthermore, the defendant's motion in limine requested, "[t]hat the jury not be told at any time by the State or the State's witnesses about any alleged prior bad acts by the Defendant." This portion of the defendant's motion in limine was granted at both trials.

By the time of the second trial, the parties had not affirmatively agreed to extend their agreement to refrain from discussing the Carroll incident from the first trial to the second. During the second trial, the State asked T.G., "[D]id it happened [sic] more than one time?" T.G. responded, "Yes." On cross-examination, defense counsel then attempted to probe the Carroll allegation:

> [T.G.], you mentioned to the state and then to me about how you communicated this—the story in the deposition of the 27th of . . . 2017 in November, and I read to you bits and pieces of that deposition to refresh your memory. You also—in that same deposition, do you recall discussing another incident that happened in Carroll, Iowa?

T.G. responded "yes" and the State objected, invoking the parties' prior agreement, the motion in limine and the rape shield law.

At a bench conference, defense counsel indicated an intent to ask T.G. in detail if defendant's abuse occurred in Carroll as well as in Audubon. Defense counsel argued the agreement not to discuss the Carroll allegation lapsed after the first trial and said the State had opened the door by eliciting from T.G. that the defendant's abuse had occurred multiple times. Without a detailed explanation, defense counsel said, "[I]t's our position that the Rape Shield Law is not applicable."

The State acknowledged the Carroll incident involved the defendant but argued it was irrelevant because it did not pertain to the charge at issue at trial. The State asked the court to bar defense counsel's inquiry into the Carroll allegation because of Iowa's rape shield law, the motion in limine, and the parties' agreement at the first trial, which defense counsel argued no longer applied. The court barred inquiry into the Carroll allegation, ruling that defense counsel could not explore the Carroll allegation on cross-examination because the motion in limine prohibited inquiries into the defendant's prior bad acts and because Iowa's rape shield law prohibited the introduction of evidence of T.G.'s other sexual behavior. Donahue argues this ruling was an abuse of the court's discretion and a violation of his constitutional right to confront witnesses, arguing specifically that

he should have been able to introduce the evidence of his own prior bad acts. We reject both defense arguments.

A court abuses its discretion when it "exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *State v. Mitchell*, 568 N.W.2d 492, 497 (Iowa 1997). We find no abuse of discretion here.

The trial court's application of rule 5.412 was sound. "Rape shield laws like Iowa's rule [5.]412 were enacted to (1) protect the privacy of victims, (2) encourage reporting, and (3) prevent time-consuming and distracting inquiry into collateral matters." *Id.* These goals are evident in the rule's text, which prohibits undue inquiry into a victim's sexual behavior. *Id.* As relevant here, rule 5.412 provides:

> a. *Prohibited uses.* The following evidence is not admissible in a criminal proceeding involving alleged sexual abuse:
> . . . .
> (2) Evidence of a victim's other sexual behavior other than reputation or opinion evidence.

The State did not charge any allegations other than the Audubon allegation. The Carroll allegation was thus "other sexual behavior" and was not reputation or opinion evidence, making rule 5.412 applicable. The court was correct in its application of the rule.

While the State asked T.G. whether the abuse occurred more than once, this one question was neither specific enough nor weighty enough to overcome the important protections afforded by the rape shield law. Such an inquiry would have been precisely the type of "time-consuming and distracting inquiry into collateral matters" rule 5.412 prevents. *Mitchell*, 568 N.W.2d at 497.

Moreover, the district court's application of the rule in this case served to protect T.G.'s privacy with regard to uncharged offenses. *See id.* It also served

the broader goal of encouraging the reporting of sexual offenses by protecting a complaining witness from expansive questioning into traumatic conduct not relevant to the charges brought at trial. *See id.* Importantly, the trial court was in the best position to decide whether the State had opened the door to the testimony, and it concluded the State did not. The trial court said, "[T]here was no implication to me that there was reference to anything that happened . . . between [T.G.] and defendant at any place other than the Audubon house." Given the direct application of the rape shield law, we disagree the ruling was an abuse of discretion, and we think the court's refusal to allow the evidence was sound.

Defendant additionally argues that rule 5.412 does not prohibit questioning into the Carroll incident because the allegation amounts to a false allegation. A serious question exists as to whether this argument was preserved. Even if preserved, the defendant wholly failed to comply with the necessary procedures to show the Carroll allegation was false. Claims of sexual conduct or misconduct by the complaining witness must be shown to be false before they become admissible at trial. *State v. Alberts*, 722 N.W.2d 402, 409 (Iowa 2006). A criminal defendant wishing to admit evidence of a complaining witness's false allegation "must first make a threshold showing to the trial judge outside the presence of the jury that (1) the complaining witness made the statements and (2) the statements are false, based on a preponderance of the evidence." *Id.* Defense counsel made no such showing to the trial judge regarding the Carroll incident, and therefore, pursuant to *Alberts*, the rape-shield law's exception for false allegations cannot apply. 722 N.W.2d at 409. Pursuant to rule 5.412(c)(1)(A), the proponent of such evidence must file a motion at least fourteen days before trial and file with the motion an

offer of proof that specifically describes the evidence and states the purpose for which the evidence is to be offered. This was not completed in the instant case.

Donahue asserts his noncompliance with the notice requirements under rule 5.412(c) is excused because "the evidence relates to an issue that has newly arisen in the case" and the court heard argument addressing the issue outside the presence of the jury. *See* Iowa R. Evid. 5.412(c)(1)(A). The appellant's brief merely asserts the allegation "was rendered impossible based on T.G.'s testimony during depositions," without specifying the nature of the impossibility. Because he has not made a showing or offer of proof that T.G.'s Carroll allegation is false, the defendant cannot invoke the rape shield law's exception for false allegations. Further, we disagree that the issue was newly raised, as the Carroll allegation was available to the defendant no later than November 2017 during the deposition of T.G.

Donahue further argues that an exception to the rape shield law applies because his constitutional right to confront witnesses was violated. Iowa R. Evid. 5.412(b)(1)(C). He cites *State v. Mitchell*, 568 N.W.2d 493, 499 (Iowa 1997) for this proposition, however we think this reliance misguided. As the court said in *Mitchell*, "No constitutional violation occurs in excluding evidence unless such evidence is relevant . . . . Moreover, even relevant evidence is not constitutionally required to be admitted if the prejudicial effect of the evidence outweighs the probative value." 568 N.W.2d at 499 (citation omitted); *see also* Iowa R. Evid. 5.401 ("Evidence is relevant if a. It has any tendency to make a fact more or less probable than it would be without the evidence; and b. The fact is of consequence in determining the action."). The *Mitchell* court rejected an argument that the

exclusion of evidence covered by the rape shield law amounted to a constitutional harm, holding that evidence of a victim's history of having a sexually transmitted disease was more prejudicial than probative. *Mitchell*, 568 N.W.2d at 499. Similarly, in *State v. Knox*, 536 N.W.2d 735, 739 (Iowa 1995), the court held that evidence of a victim's sexually transmitted disease history was properly excluded because its limited probative force did not warrant the "inflammatory and prejudicial impacts upon the victim and the proceeding by its admission." While Donahue also bases his constitutional argument on *State v. Baker*, 679 N.W.2d 7, 12 (Iowa 2004), *Baker* is distinguishable since the victim in that case had falsely boasted of a previous sexual experience. No such allegation is made here.

We cannot see how defense counsel's inquiry into the Carroll incident was relevant to the Audubon allegation unless the Carroll incident was false, and defense counsel did not comply with the procedures pertinent to false allegations. Furthermore, the inflammatory and prejudicial impact of an inquiry into the Carroll incident would violate the goals of the rape shield law. *See Mitchell*, 568 N.W.2d at 499 (identifying harassment and humiliation of a complaining witness to be "inflammatory and prejudicial" within the meaning of a relevancy analysis).

The defendant also argues that the State does not have standing to exclude evidence proffered by the defendant of his own bad acts and that the State should be prohibited from objecting to this evidence since it initially resisted the defendant's motion in limine requesting exclusion of bad acts evidence. We reject these arguments. Although the State did argue evidence of the Carroll incident was admissible as propensity evidence under *State v. Spaulding*, 313 N.W.2d 878, 880 (Iowa 1981), that argument came in its resistance to the defendant's motion

in limine prior to the first trial and was superseded by both the parties' agreement not to inquire into the Carroll incident and the ruling applying the rape shield law. It was not an abuse of discretion to prohibit the introduction of the Carroll evidence even though the State sought to introduce such evidence at an earlier point in the case's history.

We approve of the district court's application of the rape shield law, and therefore we find no abuse of discretion.

## II.    Jury instruction's alleged implication of multiple acts

The Iowa Supreme Court has previously stated:

Error preservation is important for two reasons: (1) affording the district court an "opportunity to avoid or correct error"; and (2) providing the appellate court "with an adequate record in reviewing errors purportedly committed" by the district court. These principles of error preservation are based on fairness:

> [I]t is fundamentally unfair to fault the trial court for failing to rule correctly on an issue it was never given the opportunity to consider. Furthermore, it is unfair to allow a party to choose to remain silent in the trial court in the face of error, taking a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is unfavorable.

*State v. Pickett*, 671 N.W.2d 866, 869 (Iowa 2003) (citation omitted) (quoting *DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002)).

A party objecting to a jury instruction "must specify the subject and grounds of objection." *State v. Maghee*, 573 N.W.2d 1, 8 (Iowa 1997).

> A party's objection must be sufficiently specific to alert the district court to the basis for the complaint so that if there is an error the court can correct it before submitting the case to the jury. A party's general objection to an instruction preserves nothing for review. Additionally, a party is bound by the objection the party makes to the district

court's instructions and may not amplify or change the objection on appeal.

*Id.* (citations omitted).

Donahue argues he was prejudiced by the submission of Instruction No. 20 to the jury. This instruction provided: "There is no requirement that the testimony of a victim of sexual offenses be corroborated, and her testimony standing alone, if believed beyond a reasonable doubt, is sufficient to sustain a verdict of guilty."

On appeal, Donahue takes issue with the plural word "offenses," which he argues implied to the jury that he had committed multiple offenses. Donahue's trial counsel objected to the instruction, although the objection did not raise the argument at issue on appeal:

> Your Honor, the defense has also had an opportunity to review the jury instructions and the verdict of the jury, and with—we would just make an exception to Instruction Number 20 that was added at the request of the State along with we would just request that the Court use the model jury instructions, including the model jury instructions for reasonable doubt. Thank you, Your Honor.

In overruling defense counsel's objection to the instruction, the court said: "All right. With regard to the objection to Instruction Number 20, I'm going to leave Number 20 in there. I think based on the *State v. Barnhardt* case filed on May 16th of 2018, I'm going to find it's an appropriate and proper instruction."

We reject Donahue's argument because it was not considered below. The court considered only the legality of offering a non-corroboration jury instruction, not whether there was an implication of plural offenses taken. The trial court's reliance on *State v. Barnhardt*, No. 17-0496, 2018 WL 2230938 (Iowa Ct. App. May 16, 2018), makes this clear. In that case, the defendant was convicted of ten

counts of sexual abuse. *Id.* at *1. We considered a jury instruction that read: "The law does not require that the testimony of the alleged victim be corroborated." *Id.* at *4. We determined the instruction did not misstate the law or impermissibly lower the State's burden. *Id.* However, we had no occasion in that case to consider the issue here presented because the *Barnhardt* defendant was convicted of ten counts of abuse, in contrast to Donahue's single conviction. *Id.* at *1, *4.

The trial court below cannot be said to have been alerted to the implied-pattern-of-conduct objection Donahue raises, as Donahue made no objection to the jury instruction's use of the plural phrase "sexual offenses." The issue is therefore waived, and we will not consider it. *Cf. State v. Morrison*, 368 N.W.2d 173, 175 (Iowa 1985) (finding an objection to the legality of a jury instruction waived on appeal because trial counsel's objection to the same jury instruction was limited to the instruction's wording, not its legality); *see also Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

## III.    Insufficiency of the Evidence

Donahue argues there is insufficient evidence to support his conviction. We disagree. In our review of a challenge to the sufficiency of evidence, our goal "is to determine whether the evidence could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt." *State v. Canal*, 773 N.W.2d 528, 530 (Iowa 2009). We view the evidence "in the light most favorable to the State." *Id.* Upon our review, we find sufficient evidence to support

both of the elements of sexual abuse in the third degree under Iowa Code section 709.4(1)(a).

Donahue first argues there is insufficient evidence to prove a sex act occurred. He notes "[t]here was never a date or even definitive year of the allegation presented." The statute does not require proof of a specific date and Donahue cites no authority for that requirement. *See* Iowa Code § 709.4. Donahue further argues, "there was no physical evidence" of a sex act. However, physical evidence is not required; a victim's testimony can be "by itself sufficient to constitute substantial evidence of defendant's guilt." *State v. Hildreth*, 582 N.W.2d 167, 170 (Iowa 1998).

Donahue points out that T.G. made a comment inconsistent with her allegation of Donahue's guilt when she said to a police officer that no one ever made her feel uncomfortable while she was in Audubon. The reason for this comment was explored at trial, where T.G. explained that she refrained from accusing Donahue in front of Officer Gust "[b]ecause [Kimberly] was sitting right there." T.G. explained that Kimberly's presence prevented her from accusing Donahue because Donahue is Kimberly's grandfather. In other words, she was hesitant to tell a police officer of the defendant's wrongdoing because the defendant was her stepmother's grandfather and her stepmother was "right there." The jury was able to weigh and consider T.G.'s explanation for refraining from accusing Donahue in front of Kimberly. We find T.G.'s otherwise consistent accusations sufficient to convince a rational trier of fact that Donahue performed a sex act.

Donahue also argues there is insufficient evidence to show the sex act was against T.G.'s will because T.G. "continued to voluntarily be around Donahue" and because "there was there was no testimony that, during the alleged sexual abuse, T.G.: told Donahue to stop, said no, pushed his hand away, or otherwise provided any indication that the alleged interaction was against the will of T.G." We reject this argument, as it is contrary to Iowa Code section 709.5, which provides "it shall not be necessary to establish physical resistance by a person in order to establish that an act of sexual abuse was committed . . . against the will of the person." T.G. testified that the defendant's abusive actions were "[a]gainst my will." We find this testimony to be sufficient evidence for a rational trier of fact to determine the sex act was against her will.

**Conclusion**

The district court properly applied the rape shield law to bar defense counsel from exploring the Carroll allegation on cross-examination. We reject as unpreserved Donahue's argument concerning Instruction No. 20, and we find the evidence sufficient to convince a rational trier of fact of defendant's guilt. We therefore affirm the conviction for sexual abuse in the third degree.

**AFFIRMED.**